Argued October 11, 1922, reargued January 2, reversed and re-
manded February 20, rehearing denied March 27, 1923.

# CHEBOT v. STATE INDUSTRIAL ACCIDENT COMMISSION.

### (212 Pac. 792.)

**Master and Servant—Application for Increased Compensation not New Proceeding.**

1. An application by an injured workman for increased compen-
sation on account of changed condition or increased disability is not
the beginning of a new proceeding, but merely another step in the
proceeding initiated by the filing of the original application for an
adjustment of the claim.

**Master and Servant—Jurisdiction of Commission Continues, so Long as Compensable Disability Traceable to Injury Continues.**

2. Under the Workmen's Compensation Act, the jurisdiction ac-
quired by the Industrial Accident Commission over a case as to
which an application for compensation is filed continues so long as
the workman suffers disability, the proximate cause of which may
reasonably be traced to the injury for which claim was originally
made and compensation awarded.

**Master and Servant—Application for Increased Compensation not Within Limitation.**

3. Section 6632, Or. L., providing that a workman entitled to
compensation shall file an application, that, if change of circum-
stances warrants an increase or rearrangement of compensation, a
like application shall be made, and that no application shall be valid
or claim thereunder enforceable, unless claim is filed within three
months after the injury, does not require an application calling into
action the power of the commission under Section 6626, subdivision
(i), to grant increased compensation on account of increased dis-
ability or a change in the workman's status to be filed within three
months, in view of the plain provisions imposing on the commission
the legal duty to regulate the compensation by the development of
the disability or change in status.

**Master and Servant—Increase of Compensation for Disability not a Matter of Discretion.**

4. In view of Section 6616, Or. L., extinguishing an injured
workman's right to claim damages from his employer when his
right to compensation is perfected, the right of a disabled workman
under Section 6626, subdivision (i), to increased compensation for
aggravation of the disability, is of the same dignity as his right to
receive compensation in the first instance, and the duty to award
such compensation contains no elements of discretion not associated
with the duty to award compensation in the first instance.

4. Varying the amount of award of compensation for injury, see
notes in Ann. Cas. 1916E, 889; Ann. Cas. 1917E, 469; Ann. Cas.
1918B, 733; L. R. A. 1916A, 163; L. R. A. 1917D, 186.

**Appeal and Error—Right Depends on Statute and not on Question Whether Determination is Discretionary.**

5. The right of appeal does not depend upon whether the determination appealed from involves the exercise of discretion by the tribunal rendering the decision, but upon the statute creating the right to appeal, and, if such right is not given by the statute, it does not exist.

**Master and Servant—Appeal to Court Lies from Final Action in Any Proceeding to Allow, Rearrange, or Terminate Compensation.**

6. Under Section 6637, Or. L., as amended by Laws of 1921, page 583, providing that any beneficiary not satisfied with the decision or findings of the Industrial Accident Commission may, within 30 days after notice of its final action, appeal to the court, the right of appeal is not limited to the final decision which, in the first instance, affirms or denies the right of an injured workman to compensation, but extends to the final action of the commission in any proceeding which involves the allowance, rearrangement or termination of compensation.

**Master and Servant—Error on Application for Further Compensation to Make Award for Permanent Partial Disability and Further Award for Total Disability.**

7. Under section 6632, Or. L., providing that no increase or rearrangement of compensation shall be operative for any period prior to the application, it was error on an application for additional compensation, because of aggravation of the injury, to make an award as for permanent partial disability for the loss of the right eye, occurring long prior to the application, and, in addition, to award compensation for total disability resulting from such loss and the subsequent loss of 50 per cent of the vision of the left eye, as the compensation cannot be swelled by adding compensation for stages of disability preceding the condition existing at the date of the application.

**Master and Servant—Only Compensation for Partial Disability Authorized for Loss of Eye and Partial Loss of Vision of the Other.**

8. Under Section 6626, subdivision (b), Or. L., relative to total loss of eyesight and Laws of 1913, page 198, Section 21, subdivision (f), relative to permanent partial disability, a total loss of sight of the right eye and the loss of 50 per cent of the vision of the left eye only authorized an award as for partial disability and not for total disability.

---

5. Review of facts by appeal under Workmen's Compensation Act, see notes in **Ann. Cas.** 1916B, 475; **Ann. Cas.** 1918B, 647.

7. Compensation as affected by external infection from, or subsequent incident of, original injury, see note in 7 **A. L. R.** 1186.

8. Effect of injury to employee which causes permanent partial disability, see note in 8 **A. L. R.** 1328.

**Master and Servant—Jury's Finding of Permanent Incapacity Held Conclusion Unsupported by Facts Found.**

9. Where, on an appeal to a Circuit Court from an order of the Industrial Accident Commission, the jury found that plaintiff had lost his right eye and had suffered loss of vision of the left eye amounting to 50 per cent, and that he was permanently incapacitated from any work at any gainful occupation, the finding as to permanent incapacity was in the nature of a conclusion drawn by the jury from the previous findings, and was without basis in the facts previously found, and might be disregarded.

From Multnomah: W. N. GATENS, Judge.

In Banc.

REVERSED AND REMANDED.   REHEARING DENIED.

For appellant there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. James West,* Assistant Attorney General, with an oral argument by *Mr. West.*

For respondent there was a brief and oral argument by *Mr. Henry S. Westbrook.*

McCOURT, J.—On August 20, 1915, the State Industrial Accident Commission made a final award to plaintiff for an injury to his right eye, suffered by him on May 4, 1915, while he was employed by the Sheridan Lumber Company at Sheridan, Oregon.

The award was made upon the basis of temporary total disability for one and one-third months, at the rate of $30 per month, and of permanent partial disability, consisting of ten per cent loss of function of one eye, to be compensated by monthly payments of $25 each for two and two-thirds months, or a total of $106.60. Fifty-four dollars and seventy-seven cents of this amount had been paid at the time the final award was made, and the balance of $51.83 was paid to plaintiff, and his receipt in full taken therefor on August 20, 1915.

Plaintiff accepted the award granted him, under protest. Soon. thereafter plaintiff left the State of Oregon, and did not return until early in the year 1921. In the interval the commission knew nothing of his whereabouts or the condition of his eyes.

On April 19, 1921, plaintiff filed with the Industrial Accident Commission a formal application, entitled "Petition for Additional Compensation." In his petition plaintiff represented that from about the 1st of December, 1915, until about the 24th day of April, 1919, plaintiff was unable to do any steady work, and had to make his living by accepting charity, which consisted largely of being shipped from place to place by employment agencies, some of the cities to which he was shipped being Miles City, Montana, Chicago, Illinois, Buffalo, Utica and New York City, New York, in which places he received assistance from the Salvation Army, Red Cross and other like charitable institutions; that in April, 1919, his right eye was removed at a charitable institution in New York City; that his left eye at the time of presenting his petition was so inflamed and weak, that plaintiff could stand no light upon it, and suffered continually; and that he is now incapacitated from performing any useful work or occupation, and fears that in a short time he will be totally blind, all as a direct and proximate result of the injuries sustained by him at Sheridan, Oregon, in May, 1915.

In the prayer of his petition, plaintiff demanded that his case be reopened, and that he be paid for the loss of his right eye in a lump sum, which he computed to. be the sum of $850, less $50 paid him at the time of the original award in 1915, and also demanded that he be paid compensation as for a permanent total disability.

A hearing was had before the commission on plaintiff's petition, and the same denied by the commission. Plaintiff appealed to the Circuit Court for Multnomah County, where a jury trial was had which resulted in a verdict wherein the jury found the disability of plaintiff substantially as set forth in his petition, and that the same was caused by the original injury to his eye; also that plaintiff "is now permanently incapacitated from any work at any gainful occupation."

Since returning to Oregon plaintiff has been, and is now, an inmate of the County Poor Farm, and his case was one that strongly appealed to the jury. Moreover, the evidence offered by plaintiff fairly tended to prove that his present disability developed from the original injury to his eye.

Judgment was entered by the court upon the above-mentioned verdict, in which judgment the decision of the State Industrial Accident Commission was reversed, and the commission was ordered and directed to fix the compensation of plaintiff, and therein award plaintiff the sum of $800 in a lump sum, and also to award plaintiff further compensation upon the basis of a permanent total disability, or the sum of $30 per month. The commission has appealed from the judgment and directions of the Circuit Court.

Before the matter came on for trial in the Circuit Court, the Attorney General, representing the commission, interposed a motion to dismiss the appeal from the decision of the commission, upon the ground that the commission had not since August 20, 1915, made any appealable decision relative to plaintiff's claim for compensation, and that therefore the time within which plaintiff was entitled to appeal had long

since expired. The court denied the motion, and that action is assigned as error.

The plaintiff bases his claim to further participation in the industrial accident fund and to an increase of compensation over that originally allowed by the commission, upon the declaration of the statute that—

"The power and jurisdiction of the commission shall be continuing and it may from time to time make such modification or change with respect to former findings or orders with respect thereto, as in its opinion may be justified." (Subd. "e," § 6632, Or. L.).

and the following provision of the statute—

"If aggravation, diminution or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated in any case, the commission may, upon the application of the beneficiary, or upon its own motion, re-adjust for future application the rate of compensation in accordance with the rules in this section provided, or, in a proper case, terminate the payments." Subd. "i," § 6626, Or. L.

The foregoing provisions are common to the compensation acts of all the states, except perhaps Wyoming and New Hampshire (Schneider's Workmen's Compensation Law (1922), § 552), and they express the judicial construction placed by the English courts upon a clause embodied in Schedule One of the English Act, authorizing a review of the original award and the allowance of increased compensation, when the circumstances of the workman have changed: *Gibson* v. *Wishart,* 30 Times L. R. 540 (1914); *Tyne Tees Shipping Co.* v. *Whilock* (1913), 3 K. B. (Eng.) 642, 109 L. T. R. 84 (1913); *Cox* v. *Braithwaite* (1912), 5 B. W. C. C. (Eng.) 648; *Tynron* v. *Morgan* (1909), 2 K. B. (Eng.) 66; *Griga* v. *The Harelda* (1910), 3 B. W. C. C. (Eng.) 116; *Hun-*

*newell's Case,* 220 Mass. 351 (107 N. E. 934); notes, L. R. A. 1916A, 163; L. R. A. 1917D, 186.

1. An application for increased compensation on account of changed condition or increased disability is not the beginning of a new proceeding, but merely another step in the proceeding which is initiated when the workman files his original application for the adjustment of his claim: *Indianapolis* v. *Morgan* (Ind. App.), 129 N. E. 644; *Choctaw Portland Cement Co.* v. *Lamb,* 79 Okl. 109 (189 Pac. 750); *Kriegbaum* v. *Buffalo,* 182 App. Div. 448 (169 N. Y. Supp. 307); *Fish* v. *Rutland R. Co.,* 189 App. Div. 352 (178 N. Y. Supp. 439); *Metcalf* v. *Firth Carpet Co.,* 196 App. Div. 790 (188 N. Y. Supp. 448).

The statute provides no limitation of time within which increased compensation shall be allowed upon account of aggravation of disability or within which application therefor shall be made, unless Section 6632, Or. L., contains such a limitation. That section reads:

"(a). Where a workman is entitled to compensation under this act, he shall file with the commission his application for such compensation on blanks furnished by the commission."

"(c). If change of circumstances warrants an increase or re-arrangement of compensation, like application shall be made therefor. No increase or re-arrangement shall be operative for any period prior to application therefor.

"(d). No application shall be valid or claim thereunder enforceable in nonfatal cases unless such claim is filed within three months after the date upon which the injury occurred * * ."

2. The statute gives the commission general jurisdiction over the Industrial Accident Fund and over the employers and employees contributing thereto, and special jurisdiction over the particular case of an

injured workman when such workman filed with the commission his application for compensation. By force of the statute, the jurisdiction thus acquired continues as long as that workman suffers disability, the proximate cause of which reasonably may be traced to the injury for which claim for compensation was originally made and compensation awarded thereon: *Bethlehem Ship Building Corp.* v. *Industrial Acc. Com.,* 181 Cal. 500 (185 Pac. 179, 7 A. L. R. 1180).

3, 4. It has been suggested that the three months' limitation contained in the statute, within which application must be filed, governs the right of a disabled workman to call into action the powers of the commission to grant increased compensation where increased disability has developed, or a change in the status of the workman calling for increased compensation has arisen. Such a construction, however, ignores the plain provisions of the statute which impose upon the commission a legal duty to regulate the compensation to be awarded the injured workman by the development of his disability or change in his family status; the exercise of that power by the commission and the discharge of that duty in the. very nature of things, arises in most instances, months and even years after the three months' period following the occurrence of the injury has elapsed. But it is said that such a construction does not deprive the commission of power to act in proper cases, but merely deprives the injured workman of the right to require the exercise of that power; it is asserted in effect that after the expiration of the three months' period, award of compensation to the injured workman for disability subsequently developed is a matter of grace, and dependent upon the will of the commission.

The compensation act creates an industrial accident fund for the benefit of injured workmen, and when the right of a workman to participate therein is perfected, his pre-existing right to claim damages from his negligent employer is extinguished: Section 6616, Or. L.; *Jenkins* v. *Carman Mfg. Co.,* 79 Or. 451 (155 Pac. 705); *Miller* v. *Industrial Acc. Com.,* 84 Or. 509 (159 Pac. 1150, 165 Pac. 576).

The right thus created is a valuable one, and the legislature did not intend that the benefits accruing to workmen therefrom should be withheld or enjoyed at the caprice or will of the commission.

It was the manifest purpose of the act that the compensation to which an injured workman is entitled should be adjusted from time to time as his disability as the result of injury arising out of, and in the course of his employment, should increase or diminish; to that end, it is provided in the act that the commission shall have power to require a workman entitled to compensation under the act to submit himself to medical examination from time to time, upon penalty of suspension of monthly payments in case of refusal: Section 6633, Or. L.

The right of a disabled workman to increased compensation for aggravation of disability when he has applied therefor, as required by the statute, is of exactly the same dignity as his right to receive compensation in the first instance: the statute declares that the injured workman shall receive compensation, the amount of which shall be measured by the extent of the disability that develops at any time as a direct result of his injury, and makes it the duty of the commission to award compensation accordingly.

The purpose of a formal application in such cases is, not to give jurisdiction, but to fix the time from which compensation at the new rate shall begin.

That purpose is made plain by reference to the following clauses of the statute: "The commission may * * re-adjust for future application the rate of compensation," and "no increase or rearrangement shall be operative for any period prior to application therefor."

In the case of *Choctaw Portland Cement Co.* v. *Lamb, supra,* it was urged that because the claimant did not file his claim for increased compensation within a year after the injury occurred, his claim therefor was barred by the statute, which declares that no claim for compensation should be valid unless filed within one year after the date the injury occurred. The court said:

"The respondent did file his claim for compensation within a year, but at the time it was filed it did not appear that he would lose the use of his arm. Having filed a claim within the time provided by the act we are of the opinion that under the continuing power and jurisdiction of the commission, * * his claim for the loss of his arm, growing out of the injury on which his first claim was based, was not barred."

The duty of the commission to award compensation in case of aggravated disability traceable to the injury upon which compensation has been allowed as the proximate cause thereof, is not discretionary, and contains no elements of discretion not associated with its duty to award compensation in the first instance.

5. The right of appeal does not depend upon whether the determination appealed from involves the exercise of discretion by the tribunal rendering the decision, but upon the statute creating the right to appeal, and if such right is not given by the stat-

ute, it does not exist: *Smith* v. *State Industrial Acc. Com.,* 104 Or. 640 (208 Pac. 746, 748).

6. The appeal section of the statute, in so far as it applies to the instant case, reads as follows:

"The commission shall have full power and authority to hear and determine all questions within its jurisdiction, but any beneficiary not satisfied with the decision or findings of said commission, may, within thirty days after notice of the final action of such commission, appeal to the circuit court of the State of Oregon for the county in which such claimant resides * * ." Section 6637, Or. L., as amended, Chap. 311, Laws of 1921.

One of the conditions which demanded the enactment of the Workmen's Compensation Act, and to escape which that legislation was adopted, and a commission created for its administration, is described therein as follows:

" * * that in determining the reasonability of the employer on account of injuries sustained by his workmen, a great and unnecessary cost is now incurred in litigation, which cost is divided between the workmen, the employers and the taxpayers, who provide the public funds, without any corresponding benefit, to maintain courts and juries to determine the question of responsibility under the law as it now exists * * ." Section 6605, Or. L.

The act was plainly intended to effect a withdrawal from interference by the courts of all questions relating to compensation to employees injured in hazardous employments, so far as that result is practicable or attainable, in view of the absolute right of the individual to invoke the power and jurisdiction of the courts to prevent rank injustice or the denial of substantial legal rights.

Influenced by the foregoing considerations, some of the members of this court, including the writer of this opinion, entertain the view that the term "final action," as used in the appeal provision of the statute, means the final decision in a particular case, wherein the commission in the first instance affirms or denies the right of an injured workman to participate in the fund. But a majority of the court are of the opinion that the provision is plain and unambiguous, and grants the right of appeal from the final action of the commission in any proceeding before it, which involves the allowance, re-arrangement or termination of compensation to an injured workman.

The Attorney General complains that the verdict of the jury did not warrant the court in ordering the commission to award plaintiff a lump sum payment in any amount, or compensation for total disability; that the judgment most favorable to plaintiff that the court was authorized to give upon the verdict was for permanent partial disability, with compensation payable in monthly payments for a period less than eighty months.

The jury by their verdict found:

" * * that as a result of" his original injury "and as a continuous aggravation thereof the plaintiff lost his right eye and that the same was removed and that the plaintiff is entitled to recover full compensation therefor."

Also " * * that as a result of said injury plaintiff's left eye became sore and inflamed and affected and that said left eye has continually grown worse from the date of said accident to this date and that plaintiff's loss of vision thereof is 50 per cent and that plaintiff is now permanently incapacitated from any work at any gainful occupation."

Based upon the verdict, the court ordered the commission to "fix, allow and pay * * plaintiff for the complete loss of his right eye * * $800" in a lump sum, as provided by the act at the time plaintiff received his original injury. The court also construed the verdict as a finding that the plaintiff had suffered a permanent total disability, as the result of his injury, and accordingly directed the commission to award and pay plaintiff the sum of $30 per month in monthly payments.

At the time plaintiff was injured, permanent partial disability, as it applies to plaintiff's case, was defined and compensated for as follows:

"Permanent partial disability means the * * loss of one eye * * or any other injury known in surgery to be permanent partial disability. Where permanent partial disability shall result from any injury, the workman shall receive the sum of twenty-five dollars ($25) a month for the period stated against such injury, respectively as follows: * *

"The permanent and complete loss of the sight of one eye forty (40) months, or, at the option of the workman, eight hundred and fifty dollars ($850) in a lump sum. * *

"In all other cases of injury resulting in permanent partial disability, the compensation shall bear such relation to the periods stated in this clause as the disabilities bear to those produced by the injuries named in this schedule, and payments shall be made for proportionate periods, not exceeding, however, ninety-six (96) months * * ." Subd. (f), § 20, Chap. 112, Laws of 1913.

The foregoing provisions were amended in 1917 by the omission of the provision for a lump sum payment: Section 21, Chap. 288, Laws 1917; Subd. (f), § 6626, Or. L.

Total loss of eyesight or such paralysis or other condition permanently incapacitating the workman from performing any work at any gainful occupation constitutes permanent total disability within the meaning of the act, and entitles the injured workman suffering therefrom, if unmarried, to compensation at the rate of $30 per month during the period of such disability: Subd. (b), § 6626, Or. L.

7. The judgment of the Circuit Court in effect awarded plaintiff compensation for permanent partial disability resulting from the loss of the sight of his right eye, which occurred long prior to his application for increased compensation, and in addition thereto awarded plaintiff compensation for total disability resulting from the loss of his right eye, and the subsequent loss of 50 per cent vision of his left eye.

The award so directed amounts to double compensation, which is not authorized by the act. Where a claim is made for aggravation, the right thereto is to be determined by the condition of disability existing at the time of the application or hearing thereon, and the award of compensation is based on that condition, and cannot be swelled by adding thereto compensation for the different stages of disability which precede that condition; the act prohibits the operation of the award so made for any period prior to application therefor: Subd. (i), § 6626, Or. L.; subd. (c), § 6632, Or. L.

The statute does not authorize an award to plaintiff in excess of the maximum prescribed for total permanent disability, viz., $30, payable in monthly payments while the disability continues, consequently the provision of the judgment for a lump sum payment is invalid.

8. The Attorney General points out that, under the Compensation Act, total permanent disability aris-. ing from the loss of eyesight, arises only when there is present a total loss of eyesight, and argues that the finding of the jury that plaintiff has suffered a total loss of the sight of his right eye and the loss of 50 per cent of the vision of his left eye, the total loss of eyesight essential to constitute total permanent disability, as defined by the statute, is not present.

The Attorney General insists that inasmuch as the jury found in effect that plaintiff retains 50 per cent of the vision of one eye, the verdict is a determination that as a result of his injury, plaintiff is now suffering from permanent partial disability; that such finding must prevail over the subsequent clause in the verdict, "that plaintiff is now permanently incapacitated from any work at any gainful occupation." The reported cases tend to support the contention of the Attorney General. Those cases indicate that where any useful vision remains, the disability is partial, and an award of compensation for total disability is not authorized: *Keyworth* v. *Atlantic Mills,* 42 R. I. 391 (108 Atl. 81, 8 A. L. R. 1322, and annotated note, p. 1324); 19 N. C. C. A. 707, and note collecting the reported cases.

9. The jury did not find that plaintiff's incapacity from performing any work at any gainful occupation was caused by his original injury. It may have been induced by some other cause. The finding of the jury in that respect is in the nature of a conclusion drawn by the jury from the previous finding of fact. When the facts as found by the jury in the instant case are present in any case, the act defines the condition as permanent partial disability. The conclusion of the jury under discussion is without basis of fact in the

verdict, and may be disregarded. It follows that the verdict did not authorize the trial court to direct the commission to award plaintiff compensation based upon total permanent disability.

The Circuit Court should have found in conformity with the verdict that as a result of plaintiff's original injury, he had completely lost the sight of his right eye and had suffered a loss of 50 per cent of the sight of his left eye. Judgment should have been given, reversing the case, and referring the same back to the commission, with an order directing it to fix plaintiff's compensation in accordance with the findings made by the court, and to award plaintiff compensation for permanent partial disability at the rate of $25 per month, payable monthly for not less than sixty months from the date of plaintiff's application herein.

The commission, under the authority of the statute, may require plaintiff to submit himself to the examination and treatment of eye specialists from time to time, and if under such treatment the useful vision of plaintiff's left eye increases, a modification of the award to conform to the improved condition and diminished disability may be made, after reasonable notice to plaintiff; or if a total loss of eyesight shall develop, compensation may be rearranged and an award made for total disability.

The judgment of the Circuit Court is reversed, and the cause remanded, with directions to make findings and enter judgment upon the verdict as above indicated, with the modification that the commission shall be directed to pay to plaintiff in a lump sum all past due installments of compensation.

Reversed and Remanded With Directions.
Rehearing Denied.

BURNETT, J., Dissenting.—The plaintiff was injured by a splinter which pierced his right eye on May 4, 1915, while he was employed by the Sheridan Lumber Company at Sheridan, Oregon. He filed his claim for compensation on the eleventh day of that month, and on August 20th of that year the state Industrial Accident Commission made a final award to him for permanent partial disability and took his release and discharge in favor of the state from any and all further liabilities or obligations on account of the injury.

On May 26, 1920, more than five years after the date of the injury, the commission received a letter from the plaintiff written from Kansas City, Kansas, informing the commission that on April 24, 1919, the injured eye was removed by an operation at the Eye and Ear Infirmary in New York City, and stating that in its injured condition it was endangering the left eye with traumatic cataract. The plaintiff claimed then to be entitled to a lump balance of $600. This letter took the form of an application or claim and was sworn to by the claimant. The response by the commission to this application was dated May 27, 1920, and informed the plaintiff that his case was closed September 15, 1915, and would not be reopened.

Still later, by a written application sworn to by the plaintiff April 18, 1921, and filed with the commission the following day, the plaintiff set forth the original injury and stated that at the same time the left eye became tender, sore and affected by the injury to claimant's right eye, and that the left eye was inflamed at the time of the final settlement before mentioned. This application of April 18, 1921, narrates his wanderings from place to place as far east as

New York City, and that he had considerable trouble
with his eye, finally leading to the enucleation of the
right eye as before mentioned. By this last applica-
tion the plaintiff claimed $800 with interest thereon at 6
per cent from December 1, 1915. Again, the com-
mission notified him in response to the claim then
made that the claim was "closed in August, 1915."

Finally, after some investigation of the case, the
commission on October 10, 1921, made an order "that
the application of Mike Chebot, claimant herein, for
the reopening of claim No. 3827 for the purpose of
awarding compensation for the enucleation of his
right eye should be and is hereby denied." The
plaintiff thereupon appealed to the Circuit Court for
Multnomah County, and the commission moved to
dismiss the appeal for the reason "that the defendant
has not since August 20, 1915, made any appealable
decision relative to the claim of Mike Chebot for
compensation under Chapter 1 of Title XXXVII,
Oregon Laws, and that the time in which plaintiff is
entitled to appeal has long since expired." The mo-
tion to dismiss the appeal was overruled and after
a jury trial and verdict in favor of the plaintiff,
claimant, in which it was stated that as a result of
the original injury the plaintiff lost his right eye and
that as a further "result of said injury plaintiff's
left eye became sore and inflamed and affected and
that said left eye has continually grown worse from
the date of said accident to this date and that plain-
tiff's loss of vision thereof is 50 per cent and that
plaintiff is now permanently incapacitated from any
work at any gainful occupation," a judgment was
rendered remanding the cause to the commission with
directions to pay to the plaintiff for complete loss of
his right eye the sum of $800, and further to pay

him $30 per month for permanent total disability. The commission has appealed.

A few excerpts from the statute covering the subject matter of this appeal are here set down:

"If any workman while he is subject to this act and in the service of an employer who is thus bound to contribute to the industrial accident fund shall sustain a personal injury by accident arising out of and in the course of his employment caused by violent or external means, he or his beneficiaries, or dependents, if the injury result in death, shall receive compensation according to the following schedule."

Then follow various provisions for permanent total disability, defined as "the loss of both feet or both hands, or one foot and one hand, total loss of eyesight or such paralysis or other condition permanently incapacitating the workman from performing any work at any gainful occupation." After several provisions for total disability, permanent partial disability is defined thus:

"Permanent partial disability means the loss of either one arm, one hand, one leg, one foot, loss of hearing in one or both ears, loss of one eye, one or more fingers, any dislocation where ligaments are severed, or any other injury known in surgery to be permanent partial disability. Where permanent partial disability shall result from any injury, the workman shall receive the sum of twenty-five dollars ($25) a month for the period stated against such injury, respectively, as follows: * * The permanent and complete loss of the sight of one eye, forty (40) months." Section 6626, Or. L.

By clause *i* of the same section it is provided that:

"If aggravation, diminution or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated in any case, the commission may,

upon the application of the beneficiary, or upon its own motion, re-adjust for future application the rate of compensation in accordance with the rules in this section provided, or, in a proper case, terminate the payments."

Section 6632, Or. L., reads thus:

*"Workman's Application for Compensation:*

"(a) Where a workman is entitled to compensation under this act, he shall file with the commission his application for such compensation on blanks furnished by the commission. The physician who attended him shall send to the commission a certificate made out on blanks furnished by the commission.

"(b) *Proof of Death and Relationship.* Where death results from injury, the persons entitled to compensation under this act shall make application therefor to the commission, which application must be accompanied by proof of death and proof of relationship showing the persons to be entitled to compensation under this act, certificate of attending physician, if any, and such other proof as may be required by the rules of the commission.

"(c) *Re-arrangement of Compensation.* If change of circumstances warrants an increase or re-arrangement of compensation, like application shall be made therefor. No increase or re-arrangement shall be operative for any period prior to application therefor.

"(d) *Must File Claim Within One Year.* No application shall be valid or claim thereunder enforcible in nonfatal cases unless such claim is filed within three months after the date upon which the injury occurred, nor in fatal cases unless such claim is filed within one year after the date upon which the fatal injury occurred.

"(e) *Modification of Findings by Commission.* The power and jurisdiction of the commission shall be continuing and it may from time to time make such modification or change with respect to former find-

ings or orders with respect thereto, as in its opinion may be justified. * * ''

The allowance of a lump sum as a payment to a beneficiary depends entirely upon the discretion of the commission in cases where the ''beneficiaries shall reside or remove out of the state and shall have been such nonresident for the period of one year'': Section 6626, Or. L., subd. *k.*

Section 6637, Or. L., reads thus in part:

''The commission shall have full power and authority to hear and determine all questions within its jurisdiction, but any beneficiary not satisfied with the decision or findings of said commission, may, within sixty days after notice of the final action of such commission, appeal to the circuit court of the state of Oregon for the county in which such claimant resides. * *

''Upon such appeal the court shall determine whether the commission has justly considered all the facts concerning the injury, whether it has exceeded the powers of this act, whether it has misconstrued the laws and facts applicable in the case decided, and whether it has made proper award to the injured workman, and if it shall determine that the said commission has acted within its powers and has correctly construed the law and facts the decision of the commission shall be confirmed; otherwise it shall be reversed or modified; providing, however, that in case of any trial of fact by a jury the court shall be bound by the decision of the jury as to the question of fact submitted to it. In case of a modification or reversal the circuit court shall refer the same back to the commission with an order directing it to fix the compensation in accordance with the findings made by the court; provided, that any such award shall be in accordance with the schedule of compensation set forth in this act. * * Appeals shall lie on the judgment of the circuit court, as in other civil cases. * * ''

The testimony of the plaintiff himself states the happening of the original injury, his application to the commission, its final allowance of August 20, 1915, his wanderings over various parts of the country, his acceptance of charity from the Salvation Army and from other sources, the enucleation of his right eye at a public hospital in New York City, and finally his return to this state. He testifies substantially that at the time of signing the release to the state, already mentioned, he protested that he was not well, that his right eye was blind and that the left one was inflamed on account of the injury to the right eye. Except as to the enucleation of the eye originally hurt, which by the testimony appears to have been a matter of surgical treatment not adding to his disability, the case disordes nothing beyond the original injury and the natural *sequelae.* Every condition involved was before the commission when the original decision was announced, and the same question now urged as to plaintiff's physical disability could then have been raised on appeal, the exclusive remedy pointed out by the statute for a claimant who is dissatisfied with the decision of the commission. There was no appeal taken.

If the statute allows an evasion of the limitation on appeal by mere reiteration · of application, the plaintiff's present case may be well founded, as far as a matter of pleading is concerned. As said in *Degidio* v. *State Industrial Acc. Com.,* 105 Or. 642 (207 Pac. 176):

"To authorize a re-arrangement of compensation in the form of an increase of such compensation, the application therefor must show a change of circumstances that warrant such increase or re-arrangement and that the aggravation of disability for which the increase of compensation is claimed has taken

place or has been discovered after the rate of compensation was originally established.''

The question for decision here is: Within what time must proceedings for that purpose be commenced?

The only means provided by the statute by which the jurisdiction of the commission may be invoked at the behest of an injured employee and for his benefit, is an ''application.'' This term is peculiar to the statute and is mentioned in subdivision *i* of Section 6626 relating to ''aggravation, diminution or termination of disability.'' The same term appears in Section 6632 where the workman is required to ''file with the commission his application for such compensation on blanks furnished by the commission.'' By subdivision *c* of that section, ''like application'' is required, ''if change of circumstances warrants an increase or re-arrangement of compensation.'' The use of the word ''like'' as applied to the term ''application'' indicates uniformity of signification wherever ''application'' is employed in the enactment. The sole object of ''application'' is to secure ''compensation.'' In other words, but one course, and that by ''application,'' is required or permitted on the part of the claimant to produce the common result, ''compensation,'' in his favor. Having this in mind, we come to subdivision *d* of Section 6632:

''No application shall be filed or claim thereunder enforceable in nonfatal cases unless such claim is filed within three months after the date upon which the injury occurred.''

This limitation is in immediate juxtaposition with the clauses of that section declaring an application to be necessary in the first instance, and ''like applica-

tion'' for any other relief in favor of the workman.
''Like application'' means that the term is synony-
mous wherever it appears in the statute.   The phrase
''no application'' makes no distinction between the
petition necessary to invoke the jurisdiction of the
commission for the first time and that employed for
any further relief at a later date.   On the contrary,
''no application'' embraces them all alike and brings
them equally within the limitation of ''three months
after the date upon which the injury occurred.''   A
sufficient reason for this limitation of three months
is found in the necessity of administration of the
law so that while the matter is yet fresh in the recol-
lection of living witnesses, the commission may have
better scope for inquiry into the merits of any given
claim.   The opportunity for malingery and other
fraud on the part of those who would plunder the
resources of the commission is thus wisely circum-
scribed and limited by the statute.   Manifestly, the
fund provided by the state for the liquidation of such
claims cannot be made liable without limit either of
time or amount.   Whether wisely or unwisely, the
legislative power has fixed the term beyond which
''no application can be entertained.''   This period
of limitation is the mandate of the legislative power
in regulating the administration of the system which
the state has provided for compensating injured
workmen.   It protects the commission from doubtful
cases or those which it has no opportunity to scruti-
nize owing to a long lapse of time or, as in this in-
stance, due to the long absence of the claimant from
the state, where it is impracticable to make any inde-
pendent investigation.   Whether the time limit of
three months is ample or too restricted, is not for us
to say, for that is a legislative question.

The state has not established a scheme of mere largess to be handed out to all comers, at all times, whether early or late. The statute embodies a plan, based on sound financial principles, which is read into and affects all contracts between employers and employees in the prosecution of designated occupations. In large sense, at least, as upon contract, by operation of the law the workman receives not charity, but compensation in specified · cases, and if he would enjoy that result, he must, as in any other contract, show compliance on his part with all its terms. To entertain applications filed after the time prescribed by the statute would be to open wide the door to all who would plunder the fund, resulting in the disturbance of the system and its final breakdown, to the injury of employees in general. Only by adherence to its terms can we effectuate the design of the statute to afford uniform protection to workmen against occupational injuries.

It is true that subdivision *e* of Section 6632, Or. L., declares that "the power and jurisdiction of the commission shall be continuing, and it may from time to time make such modification or change with respect to former findings or orders with respect thereto, as in its opinion may be justified." The whole of the statute, however, must be considered and the question of jurisdiction itself, although continuing, is affected by that other provision limiting to the period mentioned that attribute of jurisdiction the exercise of which is here sought in favor of the claimant. The plain purport of the section when all its parts are read together is that the claimant has no enforceable right in the premises, unless his application is made within that period of three months after the date of the injury; and this being true, his only remedy, that by appeal from the original decision, has long

since lapsed and his present petition does not state any claim which he can successfully prosecute against the commission.

The instant case is manifestly an effort to recover arrearages of what the plaintiff claims would have accrued to him if the commission had continued his payments according to the original plan. The only procedure that would suffice to accomplish that result was an appeal to be taken as the statute then stood, in thirty days from the date of the decision discontinuing his allowance. It cannot be brought about by the new application filed April 19, 1921, for subdivision *c* of Section 6632, Or. L., says, "no increase or re-arrangement shall be operative for any period prior to application therefor." In any view of the case the Circuit Court was wrong in allowing arrears or payment in the sum of $800.

For the reason, however, that the testimony discloses no situation that was not in existence at the time of the original order closing the case, and further that the application was not filed within three months after the date of the injury but more than five years thereafter, the plaintiff had no standing before the commission or before the court, and his appeal should have been dismissed.

For these reasons I dissent from the majority opinion.

Mr. Chief Justice McBRIDE concurs in the result of this dissenting opinion.