Argued September 18, affirmed October 17, 1969

BOORMAN, *Respondent, v.* STATE COM-
PENSATION DEPARTMENT,
*Appellant.*
459 P2d 885

*Quintin B. Estell,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Evohl F. Malagon, Assistant Attorney General, Eugene; Wallace Carpenter, Assistant Attorney General and Chief Counsel State Compensation Department; and Robert Y. Thornton, Attorney General, Salem.

*Robert L. Ackerman,* Springfield, argued the cause for respondent. On the brief were Babcock and Ackerman, Springfield.

John J. Haugh and Raymond J. Conboy, Portland, filed a brief for American Trial Lawyers Association as amicus curiae.

Before SCHWAB, Chief Judge, and LANGTRY, FOLEY, FORT and BRANCHFIELD, Judges.

LANGTRY, J.

Plaintiff suffered an industrial accident which resulted in total loss of one eye and most of the vision in the other. His total vision loss, based on vision for

two eyes (binocular vision), was variously estimated in evidence from 72% to 91.6%. On the basis of his own testimony and supporting evidence that he was by this injury rendered incapable of performing gainful employment, claimant contends he is entitled to workmen's compensation for permanent total disability.

In this series of *de novo* hearings and appeals, the hearing officer, who was the only one who saw and heard the witnesses, upheld the claim. The Workmen's Compensation Board reversed, holding he had 85% loss of vision and should be awarded compensation for permanent partial disability. The circuit court reversed the Board, holding that there was a 91.6% loss of vision; that claimant is unable to engage in any gainful occupation, and is permanently and totally disabled within the meaning of the Workmen's Compensation Act.

This appeal by the State Compensation Department contends: (1) that the circuit court erred in finding 91.6% loss of vision, and (2) under two assignments, that it erred in finding permanent total disability (a) as a fact, and (b) as a matter of law under ORS 656.206(1).

■ There was no error in the circuit court's finding of 91.6% loss of, vision. The formula for determining such loss is in the Act.

ORS 656.214:

"*Permanent Partial Disability* * * *.
"(2) (h) [sets out the method of computing loss of monocular vision] * * *.
"(i) * * * [C]ombined binocular visual loss shall be calculated by taking three times the visual loss in the less damaged eye plus the visual loss in

the more damaged eye and dividing that amount by four. In the case of individuals with compensable visual loss involving both eyes, either the method of calculation for monocular visual loss or that for combined binocular visual loss shall be used, depending upon which allows the greater award * * *."

We accept from the evidence, as did the hearing officer and the circuit court, Dr. McCallum's report that the remaining visual efficiency of the left eye is 11.2% and of the right eye is nothing. The evidence shows that claimant had "visual efficiency" in both eyes to perform his work with no difficulty of any kind before the injury, and Dr. McCallum's report shows he lost 88.8% of this in one eye and 100% in the other. Application of the statutory formula quoted above from ORS 656.214(2)(i), to Dr. McCallum's findings, which the circuit court did, produces a result of 91.6% loss of binocular vision. The use of the formula for monocular vision in subsection (h) does not produce as large a result, so subsection (i) applies.

■ The other two assignments of error involve interpretation and application of ORS 656.206(1), as it was before a 1969 amendment:

"'Permanent total disability' means the loss, including preexisting disability, of both feet or hands, or one foot and one hand, total loss of eyesight or such paralysis or other condition permanently incapacitating the workman from regularly performing any work at a gainful and suitable occupation."

We see no need to summarize the evidence in this opinion. The hearing officer and the circuit judge found satisfactory evidence upon which to base a find-

ing that claimant's loss of vision rendered him incapable of a gainful occupation. From our review of the evidence in the record we come to the same conclusion. We are satisfied that the claimant made more than a reasonable effort to do any kind of gainful work he could after recovery, and that he simply did not have the vision to properly do any of the jobs he tried, or to do them in safety for himself or those around him.

■ This leaves the problem of applying ORS 656.206 (1) to the facts thus found. In *Chebot v. State Industrial Acc. Com.*, 106 Or 660, 212 P 792 (1923), decided when ORS 656.206(1) was, for purposes here involved, as it is now, it was held that the loss of one eye and 50% vision of the other could not be the basis for a finding of permanent total disability, in spite of a jury's finding that it was. The loss of vision in *Chebot* left the claimant with 37.5% binocular vision, compared with 8.4% in the case at bar. The court said, citing cases from other jurisdictions:

> "* * * [W]here any *useful* vision remains, the disability is partial, and an award of compensation for total disability is not authorized * * *." (Emphasis supplied.) 106 Or at 674.

Apparently, the application of ORS 656.206(1) to a similar visual loss situation has not occurred at the appellate level again until now. However, question has arisen as to what constitutes permanent total disability with reference to loss of limbs. *Kajundzich v. State Ind. Acc. Com.*, 164 Or 510, 102 P2d 924 (1940); *Jones v. Compensation Department*, 250 Or 177, 441 P2d 242 (1968). In the latter case, where it was claimed that by reason of age, and lack of education

and training, loss of an arm constituted total permanent disability, the Oregon Supreme Court said:

> "In *Kajundzich v. State Ind. Acc. Com.* * * * the court rejected the notion that the peculiar circumstances of the individual claimant could be called upon subjectively to enhance the measure of loss of function beyond the statutory schedule * * *. Despite the apparently subjective language of ORS 656.206(1), we said that the upper limit of recovery for the loss of the use of an *extremity* is * * * in the statutory schedule for the loss of the same *limb* by separation.
>
> "* * * There is nothing in the case at bar to justify a departure from a settled rule." (Emphasis supplied.) 441 P2d at 243.

The rule of these cases is limited by this language to a situation involving loss of limbs; the rule of *Chebot* is limited by its language to a situation where "useful vision remains." There would be no logic in equating loss of vision with loss of use of limbs, because the effect of each on ability to work is different. "Useful vision," as the term is used in *Chebot,* obviously means vision which is useful in a gainful occupation.

Many cases concerning loss of vision under workmen's compensation laws in other states have been reported. See Annotations in 8 ALR 1322, 1331 (1920); 24 ALR 1466, 1470 (1923); 73 ALR 706, 719 (1931); 99 ALR 1498, 1509 (1935); and 142 ALR 822 (1943). At page 836 of the latter note, speaking specifically of the kind of fact situation existing here, the writer said that the decisions are in conflict, due largely to the difference in applicable statutory provisions. Our examination of cases from other jurisdic-

tions bears out this observation, and we find few of them helpful in construing the Oregon statute.①

Legislative history which has occurred after the circuit judge decided this case has been urged upon us in support of the defendant's contentions. House Bill 1202 of the 55th Legislative Assembly of the State of Oregon (1969), would have amended ORS 656.206 (1) to read:

> " 'Permanent total disability' means injury, paralysis or other condition permanently incapitating the workman from regularly performing any work at a gainful occupation. 'Permanent total disability' includes, but is not limited to the loss, including preexisting disability, of both feet or hands or of one foot and one hand or total loss of eyesight."

We agree that this amendment, if enacted, would have left no doubt but that the interpretation urged by claimant is correct. The Committee on Labor & Management, to which House Bill 1202 was referred, tabled it. In face of this legislative action, the defendant asserts that we would be usurping legislative function if we were to disturb the settled rule of *Kajundzich* and *Jones,* supra. But therein lies the fallacy of the argument. The minutes of the legislative committee show that *Jones* was considered, with its rule concerning loss of use of limbs. There was no mention

① One case, construing a statute quite similar to the one here being construed, has a well reasoned opinion which is persuasive because of the similarities, and that it was decided the same year as was *Chebot.* There, the injury completely blinded claimant in one eye and destroyed all vision in the other except 5% to 15%. His remaining binocular vision was 2.5% to 7.5%. The court held this to be a "practical" destruction of sight when considered in connection with the purpose of workmen's compensation legislation, and decreed total permanent disability. American Zinc Co. v. Lusk, 148 Tenn 220, 255 SW 39 (1923).

of *Chebot,* and its observation and holding about remaining useful vision. We conclude that this legislative history is of no value in our present problem of statutory construction.

We hold that claimant's practical loss of useful eyesight was such that he could not engage in a gainful occupation which involved the use of vision; that this means "total loss of eyesight" in the context of ORS 656.206(1), and that he is entitled to a total permanent disability award.

■ Claimant, in his brief, has moved for an attorney fee pursuant to ORS 656.301(2). We find claimant to be entitled thereto and set the reasonable amount for such fee to be $500.

Judgment affirmed.