Argued February 11, affirmed as modified March 12, 1970

## TRENT, *Respondent, v.* STATE COMPEN-
## SATION DEPARTMENT, *Appellant.*
### 466 P2d 622

*James F. Larson,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, and Wallace Carpenter, Assistant Attorney General, Salem.

*Edwin A. York,* Portland, argued the cause for respondent. With him on the brief were Lent, York, Paulson & Bullock, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

## LANGTRY, J.

This is a workmen's compensation appeal. At time of injury claimant was 75 years of age and had retired from steady construction work. He is a laborer with limited education and training. After retirement he had for several years worked gardening and wood-hauling jobs for 25 or 30 different people. According to his testimony this work was steady in the spring and early summer, light in the late summer, steady in the fall, and sparse in the winter. While he was operating a riding lawnmower for an employer, it tipped over and the blades severely cut his foot, resulting in complicated surgery, multiple compound fractures of bones in his foot and ankle, extensive skin grafting, and as a consequence, permanent injury. The evidence indicates that the claimant walks with a cane and is able to work only one or two days at a time before being "stoved up" and unable to work for some

time thereafter. His attending physician thought he was doing well to be up and caring for his personal needs, but he also continued doing some odd jobs for pay.

Claimant testified that he fell on his right side and shoulder at the time of the injury and that about a month after he left the hospital he began having trouble with his right shoulder. He stated several times during direct and cross-examination that Walter C. Reynolds, M.D., his physician, gave him pain pills and shots for the shoulder trouble. At one point when questioned about the shots, claimant said:

> "A  He gave me a shot in this arm yesterday; I was telling him about the shoulder, you know, and they shot me in the arm yesterday."

This testimony was on October 20, 1967, before the hearing officer. During the hearing it developed that Dr. Reynolds' written evaluation of the injury had not been submitted, and the hearing officer specifically requested it before she would make her findings. In response to this specific request, Dr. Reynolds provided a letter dated November 6, 1967. It read, in part:

> "I know of no involvement of his shoulder, at least I have no notation in my record of shoulder difficulty. I, therefore, cannot relate this to this accident of May 2, 1966."

In her findings dated December 18, 1967, the hearing officer specifically stated that "A thorough review of the voluminous hospital records  *  *  * shows no complaint of pain regarding the shoulder area  *  *  *." She also noted the language in Dr. Reynolds' letter and said that there was "no medical substantiation of a causal connection" between the

accident and the shoulder complaint, and thus accorded no weight to this claim.

The hearing officer held that the injury to the foot was totally incapacitating and awarded permanent total disability. Between the time of her award and the *de novo* review by the Workmen's Compensation Board, the Oregon Supreme Court decided *Jones v. Compensation Department,* 250 Or 177, 441 P2d 242 (1968), which pointedly held that the "upper limit of recovery for the loss of the use of an extremity is the award provided in the statutory schedule for the loss of the same limb by separation." The Workmen's Compensation Board applied the *Jones* decision and set aside the finding of permanent total disability. The finding of the State Compensation Department had been 40 per cent loss of use of a foot. The Board raised this to 65 per cent loss of use of a leg.

The circuit court in the case at bar considered the *Jones* case, and held that the claimant was permanently and totally disabled. From this, the Department (now Fund) appealed. It is not clear whether the circuit judge found that there was a shoulder injury attributable to the accident or whether there was total disability resulting from the foot and leg injury alone.

We construed ORS 656.206 (1) in *Boorman v. Compensation Dept.,* 1 Or App 136, 459 P2d 885 (1969), holding that a 91.6 per cent loss of binocular vision amounted to a total loss of industrial eyesight. Permanent total disability is defined by ORS 656.206(1) to be the loss "* * * including preexisting disability, of both feet or hands, or one foot and one hand, total loss of eyesight or such paralysis or other condition permanently incapacitating the workman * * *."

■ In *Boorman,* the *Jones* ruling, supra, was not applicable because the latter applies to "loss of the use" of an extremity. In *Jones,* it was contended that the loss of use of an arm, coupled with "advanced age, lack of education, and limited training," made the claimant substantially unemployable, and, therefore, entitled to permanent total disability. This contention was rejected. Until the legislature changes the statute or *Jones* is reversed or modified by the Court which decided it, it is our interpretation that the maximum award can be only that scheduled for the "loss of the use" of the extremity, where, in a case like this, the only injury is to the extremity.

■■ Claimant asserted a shoulder injury and a foot and leg injury. When they are coupled, he says, the case is removed from application of *Jones* and he should be awarded permanent total disability. As noted, the claimant testified that his physician had given him a shot for his shoulder pain just the day prior to his testimony. Yet his doctor, when specifically asked about the shoulder injury a few days after claimant's testimony, indicated that he had no knowledge of such injury. The hearing officer rejected the claim concerning the shoulder injury with this evidence before her. We give weight to the finding of the officer who saw and heard the witnesses, *Moore v. U. S. Plywood Corp.,* 1 Or App 343, 462 P2d 453 (1969), and conclude that a shoulder injury was unproven.

■ The remaining question is what disability should be awarded, on the basis of the record, for the injury to the foot and leg. We specifically find that the leg as well as the foot were injured within the meaning of the Workmen's Compensation Law. "Actual earnings are important but not the sole basis for measuring

earning capacity." *Ryf v. Hoffman Construction Co.,* 254 Or 624, 633, 459 P2d 991 (1969). We may consider other factors like those in this case. 254 Or at 634. Evidence comparing the ability of the claimant to work and earn before and after the injury, coupled with other factors shown by evidence, brings us to the conclusion that claimant should be awarded 80 per cent instead of 65 per cent loss of function of a leg.

The judgment order of the circuit court is modified to provide that claimant shall be awarded 80 per cent loss of use of a leg.

Affirmed as modified.