Argued July 27, reversed and the order of the hearing officer reinstated August 10, petition for rehearing denied September 6, petition for review denied November 8, petition for attorney fees denied by opinion October 12, 1972

## GIESE, *Appellant, v.* SAFEWAY STORES (No. 77930), *Respondent.*

499 P2d 1364
501 P2d 982

*Allen T. Murphy, Jr.,* Portland, argued the cause for appellant. With him on the brief were Green, Richardson, Griswold & Murphy, Portland.

*Charles R. Holloway, III,* Portland, argued the cause for respondent. With him on the brief were Tooze, Kerr & Peterson, Portland.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

Claimant appeals from a judgment that a coronary occlusion or thrombosis, resulting in a myocardial infarction, suffered on the job was not materially contributed to by claimant's work activity. The hearing officer had found that the work activity was a material contributing factor, and the Workmen's Compensation Board had reversed that finding.

On the day claimant suffered the heart attack he started work at his job as a meat cutter at 7 a.m. The attack came about 55 minutes later. His job was to cut sirloin tips from beef hindquarters hanging by hooks set on rollers on an overhead track in a meat processing plant. Evidence was that the tip is usually "pulled" from the quarter with two or three strokes of a sharp knife, but that it can be cut in one continuous stroke by the expenditure of considerable strength and energy, even in cold, hard meat such as was being processed. The claim is based upon the contention that claimant had been urged by a fellow workman to speed his work up by doing the one-stroke cut, and that he had been doing it continuously at the rate of one and a half to two cuts per minute for 15 or 20 minutes with expenditure of much energy, immediately before the attack occurred. The fellow workman testified that he remembered when claimant became ill, but did not remember that he had urged the speed-up, or cutting with one stroke. However, he did not testify that it did not happen, agreeing that such occurrences

were common and that it could have occurred without his remembering about it.

Two heart specialists, Drs. Rogers and Sutherlin, testified. A deposition was taken from a general practitioner, Dr. Gray, who attended claimant upon his admission to the hospital on the date of the heart attack. The report of Dr. Griswold (professor of cardiology at the University of Oregon Medical School) is in the record. Drs. Rogers and Sutherlin had viewed a motion picture taken sometime afterward of ordinary tip cutting on the line in question. Our understanding of Drs. Rogers' and Sutherlin's testimony, respectively considered as a whole, is that in the opinions of each the ordinary activity, or several of the described one-stroke cuts would not have been such stress as to have been a contributing cause of the thrombosis, but that continuous one-stroke cuts with expenditure of great energy could have been such a cause.

Dr. Gray was of the opinion that the work activity was a material factor. However, he based his opinion on the history he had taken, and his notes were that claimant informed him that he had been doing his usual work—"lifting sides of beef." It is undisputed that such information was erroneous.

Dr. Griswold's report was that in his opinion "* * * the work activity * * * particularly cutting off * * * of tip * * * in one swoop did contribute * * *. He [claimant] states that * * * this single stroke was unusual * * *." The report does not disclose what information Dr. Griswold had about whether the one-stroke activity had been continuous or isolated.

The variety of opinions we have before us makes

it important to determine, if possible, just what claim-ant's activity had been preceding the attack.

He told Dr. Gray on the day of the attack that he had been lifting sides of beef. At the time he was very sick and quite apprehensive. It is understandable that he may not have related events with accuracy. We do not know just what he told Dr. Griswold, with whom he consulted nine months later, about the activity ex-cept that, necessarily, he mentioned unusual one-stroke cuts.

On the witness stand, in direct examination he testified:

"Q How long had you been doing this one stroke technique?
"* * * * *
"A Oh, fifteen, twenty minutes."

On cross-examination:

"Q And you don't know whether you were able to complete the cut or not?
"A I think that I had to * * * I am pretty sure that I could do it.

"Q You could or you did?
"A I could and did.

"Q Now, this is just on one tip, or is this on several?
"A He made the jesture [sic] [the fellow work-man, to speed the work up by using the one cut] two or three times.

"Q And so, you did it two or three times?
"A I would say that I tried two or three times.
"* * * * *
"A Did I do it in one stroke?

"Q Yes?
"A I believe I did, yes."

On redirect he testified:

> "Q And you say that you were doing it for about fifteen or twenty minutes?
> "A Yes.
>
> "* * * * *
>
> "A I am saying that this could be done and that—I am saying that it can be done and I possibly did do it, as I recollect, that I did do it. If I am not mistaken, but — (interrupted)"

On recross he testified:

> "Q All right, it is possible that you didn't do it or that you did not make those one stroke cuts?
> "A I am saying that I did do it or that I approximately did to do it. I am saying that I did do it."

The hearing officer then questioned:

> "Q I gather from what you have testified from the actions of Mr. Brehoney, I believe the name is, you were prodded into accelerating the speed of your work?
> "A Yes.
>
> "Q I gather that you were being prodded to accelerate and that you proceded [sic] to work faster?
> "A Yes.
>
> "* * * * *
>
> "Q This elusive one stroke, if it is regarded as a pure stroke without any imperfections is not really too important, except that it is something that he tried to do and while in the process of trying to do so, you feel that this was the extra effort?
> "A Yes."

The hearing officer saw and heard the witnesses. Despite the confusing testimony of claimant the hearing officer obviously believed that claimant did make

sense, and concluded that the claimant's testimony substantiated the contention that claimant worked at top speed for 15 or 20 minutes immediately preceding the attack, and that this, viewed in light of the medical evidence, supported the claim. The question of fact is close, and could be resolved either way with justification. Under the circumstances we have related we incline to the decision of the fact-finder who saw and heard the witnesses.[1]

Reversed, and the order of the hearing officer is reinstated.

## ON PETITION FOR ATTORNEY FEES

---

[1] In Hannan v. Good Samaritan Hosp., 4 Or App 178, 192, 194-95, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971), we said:

"In so far as the resolution of an issue turns upon the credibility of witnesses the court should give weight to the findings of the hearing officer who saw and heard those witnesses * * *.

"* * * * *

"* * * When the situation calls for us to give weight to the findings of the individual who saw and heard the witnesses or to defer to administrative expertise based upon repetitive performance of specialized function, we must look back, not to the findings of the circuit court, but to the administrative findings. * * * By the same token we cannot in any way be bound by those findings. * * * Having performed our function in the manner outlined we have the duty to resolve such cases as our independent judgment dictates. If we differ with the circuit court it is not that we are more final because we are more infallible, but that we are more infallible because we are more final."

458

Allen T. Murphy, Jr., and Green, Richardson, Griswold & Murphy, Portland, for the petition.

Charles R. Holloway, III, and Tooze, Kerr & Peterson, Portland, contra.

Before SCHWAB, Chief Judge, and LANGTRY and
FORT, Judges.

LANGTRY, J.

Claimant petitions this court for attorney fees
to be paid by employer for his successful appeal to
this court of an adverse judgment of the circuit court,
*Giese v. Safeway Stores,* 10 Or App 452, 499 P2d 1364
(1972), and for his unsuccessful appeal to the circuit
court of the adverse decision of the Workmen's Compensation Board.

We consider our authority to grant such attorney fees in workmen's compensation cases to be the
same as that of the Supreme Court. *Boorman v. Compensation Dept.,* 1 Or App 136, 143, 459 P2d 885
(1969). Such fees may be awarded only when expressly
authorized by statute. *Bailey v. Morrison-Knudsen Co.,*
5 Or App 592, 598, 485 P2d 1254 (1971); *Peterson v.
Compensation Department,* 257 Or 369, 477 P2d 216
(1970); *Uris v. Compensation Department,* 247 Or 420,
427 P2d 753, 430 P2d 861 (1967); *Adair v. McAtee,* 236
Or 391, 396, 385 P2d 621, 388 P2d 748 (1964).

There are three specific sections of the workmen's compensation statute, ORS ch 656, which provide for an award of attorney fees to be paid by the
State Accident Insurance Fund or by the direct responsibility employer. In addition there are provisions
which provide for attorney fees to be paid along with
a penalty where the Fund or direct responsibility employer unreasonably denies a claim or delays payment
of or refuses to pay an award. We do not here consider these "penalty" situations.

ORS 656.382(2) provides:

"If a request for hearing, request for review or court appeal is initiated by an employer or the fund, and the hearing officer, board or court finds that the compensation awarded to a claimant should not be disallowed or reduced, the employer or fund shall be required to pay to the claimant or his attorney a reasonable attorney's fee in an amount set by the hearing officer, board or the court for legal representation by an attorney for the claimant at the hearing, review or appeal."

ORS 656.301(2) reads:

"In case of an appeal by the State Accident Insurance Fund or employer from an adverse decision of the circuit court, if the judgment of the circuit court is affirmed, the claimant shall be allowed attorneys' fees to be fixed by the court and to be paid by the party initiating the appeal, in addition to the compensation."

Read together these two statutes provide that where there has been an award, and the appeal, review or hearing is brought by the State Accident Insurance Fund or the direct responsibility employer, and the award is affirmed, the claimant is entitled to have his attorney fees paid. We find that in this situation we are authorized to grant fees only under the authority of ORS 656.301(2). *Boorman v. Compensation Dept.,* supra.

Neither of these provisions is authority for the granting of fees in the case at bar either in this court or in the court below because in both instances the appeal was brought by the claimant, not by the employer.

ORS 656.386 reads:

"(1) In all cases involving accidental injuries

where a claimant prevails in an appeal to the circuit court from a board order denying his claim for compensation, the court shall allow a reasonable attorney's fee to the claimant's attorney. In such rejected cases where the claimant prevails finally in a hearing before the hearing officer or in a review by the board itself, then the hearing officer or board shall allow a reasonable attorney's fee; however, in the event a dispute arises as to the amount allowed by the hearing officer or board, that amount may be settled as provided for in subsection (2) of ORS 656.388. Attorney fees provided for in this section shall be paid from the Industrial Accident Fund as an administrative expense when the claimant was employed by a contributing employer, and be paid by the direct responsibility employer when the claimant was employed by such an employer.

"(2) In all other cases attorneys' fees shall continue to be paid from the claimant's award of compensation except as otherwise provided in ORS 656.301 and 656.382."

■ This statute provides the only authorization for the awarding of attorney fees where the appeal is brought by the claimant. This statute does not authorize an award of attorney fees to be paid by the direct responsibility employer where claimant appeals from an adverse decision of the circuit court. *Uris v. Compensation Department,* 247 Or 420, 429, 427 P2d 753, 430 P2d 861 (1967). Considering ourselves to have the same authority as the Supreme Court to grant attorney fees we must deny petitioner's motion for fees in this court. Any prior decisions by this court inconsistent with this holding are overruled.

Petitioner's request for an award of attorney fees in the circuit court must also be denied. ORS 656.386(1) provides that the claimant is entitled to

fees only when he prevails in an appeal to the circuit court. Here claimant was unsuccessful in his appeal to the circuit court. Without specific statutory authorization we are powerless to grant fees in either situation.

■ We conclude ORS 656.386(2) is controlling in this case. Petitioner's attorneys are entitled to be paid a reasonable fee from the claimant's award of compensation. *See also* ORS 656.388.