Argued May 22; affirmed June 5, 1940

# KAJUNDZICH *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

### (102 P. (2d) 924)

In Banc.

*H. Lawrence Lister,* Assistant Attorney General (I. H. Van Winkle, Attorney General, and Oliver Crowther and C. S. Emmons, Assistant Attorneys General, on the brief), for appellant.

*Victor R. Griggs,* of Portland (Gunther F. Krause, of Portland, on the brief), for respondent.

BELT, J. Plaintiff was injured in the course of his employment while working as a choker chaser for the Tidewater Timber Company. The State Industrial Accident Commission awarded him compensation on the basis of permanent partial disability of 48° which is equivalent to a loss of 75 per cent in the function of a foot. It is not recited in the final order closing claimant's case and making the above award that the disability refers to an injury of the foot, but the evidence plainly indicates that such was the intention of the commission.

Claimant, after denial of his petition for rehearing, appealed to the circuit court from the order of the commission. In his complaint he alleged an injury to the "muscles, tendons, ligaments, and nerves of the left leg" and a "severe fracture of the bones of the left ankle." Claimant further alleges that such disability constitutes a permanent total disability or, in the alternative, a permanent partial disability equivalent to 100 per cent loss of function of an arm. The prayer of his complaint was in accordance with such allegations.

On trial, before a court without a jury, the commission contended that the only injury the claimant sustained was to his left foot and that, since the statute (§ 49-1827.6, Oregon Code Supplement 1935) makes specific provision for the amount to be paid for such injury, the trial court could not make an award in

excess thereof, based on injury to his leg or some other part of his body.

After denying defendant's motions for nonsuit and directed verdict, the circuit court entered a general finding that plaintiff "suffers a permanent partial disability equivalent to 78°" and remanded the cause with directions to the commission to make an award in keeping with such finding.

██ We agree with the appellant commission that, if there was no substantial evidence tending to show an injury to the left leg, the award must be based upon the injury to the foot in accordance with the specific statutory provision fixing the compensation therefor. The right of a workman to receive compensation for injuries sustained by him in the course of his employment is purely statutory. The workman, the commission and the court are bound by the statute fixing the amount of compensation for specific injuries: *Soukup v. Shores Co.*, 222 Iowa 272, 268 N .W. 598; *Mackenzie v. Western Indemnity Co.*, (Tex.), 239 S. W. 317; *Petroleum Casualty Co. v. Seale*, (Tex.), 13 S. W. (2d) 364; *Rhinelander Paper Co. v. Industrial Commission*, 216 Wis. 623, 258 N. W. 384; *Dowling v. Gates*, 253 N. Y. 108, 170 N. E. 511; *Freyn Bros. v. Jameson*, 85 Ind. App. 363, 154 N. E. 290; *Greseck v. Farmers Union Elev. Co.*, 123 Neb. 755, 243 N. W. 898. Furthermore, the statute applies to all workmen alike. The violinist who loses a finger receives the same compensation under the workmen's compensation act as the ditch digger who loses his fingers in the course of his employment, even though such injury differs greatly with individuals as to the impairment of ability to earn a livelihood.

Section 49-1827.6, Oregon Code Supplement 1935, provides that "when permanent partial disability re-

sults from an injury, the workman shall receive the sum of twenty-five dollars ($25.00) for each degree stated against such disability, as follows:

"For the loss by separation of one (1) arm at or above the elbow joint, or the permanent and complete loss of the use of one (1) arm, ninety-six (96) degrees.

          \*          \*          \*          \*          \*          \*          \*

"For the loss by separation of one (1) leg, at or above the knee joint or the permanent and complete loss of the use of one (1) leg, eighty-eight (88) degrees.

"For the separation of one (1) foot at or above the ankle joint or the permanent and complete loss of the use of one (1) foot, sixty-four (64) degrees.

          \*          \*          \*          \*          \*          \*          \* , ,

Under the above schedule, if claimant's foot had been amputated as a result of injury, he would have had a disability of 64°. The commission concluded that plaintiff had not completely lost the use of his foot, so made its award on the basis of 48° disability, or 75 per cent loss of the function of his foot.

■ In our opinion, the cases above cited and relied upon by appellant do not preclude recovery in the instant case for the reason that the plaintiff has alleged and introduced some substantial evidence tending to show injury to his left leg. After all if, in truth and in fact, he has sustained an injury to his leg—although the original injury was to his foot—there is no good reason to restrict his compensation to the amount specified for injury to his foot, and in our opinion the legislature did not so intend.

In *Petroleum v. Seale,* supra, the court recognized the above principle and said:

"We do not mean to hold that an employee who has received an injury to a specific member of the body is confined to a recovery of the compensation specially

provided for such injury if he is able to allege and prove other injuries or if it be fairly shown that the injury to the specific member has involved other portions of his body or affected his general health. Under such allegations and proof he may be entitled to have his injury compensated under the more liberal provisions of the act.''

In *Dowling v. Gates,* supra, the court thus stated the rule:

''A claimant who has suffered a schedule injury covered by subdivision 3 of section 15 is entitled only to an award of the amount specified in the schedule for such injury in case the effect of the injury is the usual and expected effect. If, however, some unusual and extraordinary condition develops as a result of the injury the fact that the original injury is covered by the schedule does not prevent an award for the actual, although unusual and unexpected, condition which has developed as a result of the accident. The amputation of a foot may result in blood poisoning, paralysis or death. They are not the usual results of the injury and operation, although they may be the natural and unavoidable results in particular cases. When such an unusual and unexpected result occurs, an increased award should be made.

''The determination must depend upon the facts in each case. If the facts establish that a claimant is suffering from a serious, unusual and unexpected condition as the result of a schedule injury, he is entitled to an award greater than that provided for such schedule injury. If the condition is the usual and expected result of the injury, the award must be limited to the schedule amount.''

The court in *Greseck v. Farmers Union Elev. Company,* supra, said:

''* * * the injury to the appellee was confined to the second finger of the right hand. There were no unusual or unexpected complications attending the in-

jury, and appellee's disability resulting from the injury is compensable on account of permanent partial loss of the use of the finger, and not for permanent partial loss of the use of the hand.''

■ Turning to the record in the instant case, we find that Dr. Alan Welch Smith thus testified in regard to claimant's injury:

''* * * he has a complete loss of sensation far above his knee, including that leg and his foot, which indicates to my mind that there was a very destructive force which *destroyed the nerves to his leg,* and that is causing the atrophy of his leg. * * * (Italics ours.)

''Q. How extensive is the atrophy, Doctor; is it confined to below the knee, or his whole leg? A. It is practically his whole leg. It has gone clear up above his thigh. You can take a needle and test him out.

\*    \*    \*    \*    \*    \*    \*

''Q. How extensive is that anesthesia? A. Well, you can do most anything you want with it; you can take a needle and stick into him, and he hasn't any sensation there at all * * *. He has just a peg to stand on, that is all. Insofar as that leg is concerned, he would be better off if he had that leg taken off and an artificial leg put on.''

Other doctors attributed the atrophy of the left leg to non-use rather than to nerve injury. It is not for this court to say who is right. It was a question of fact for the circuit court to decide. We conclude there is substantial evidence tending to support the general finding of injury to the leg.

■ We agree that, in view of the statute defining permanent total disability, the plaintiff ought not to have asked for an award based on permanent total disability, but that does not preclude the court from granting the relief to which the claimant was entitled. The

gravamen of the complaint is that plaintiff sustained an injury to his leg and foot. Plaintiff's allegations in reference to the relief to which he is entitled and the standard by which his injuries should be measured are mere conclusions of the pleader.

Other assignments of error are not deemed of importance since the case was tried by the court without a jury.

The judgment is affirmed.

BEAN and BAILEY, JJ., not sitting.