Argued March 27, reversed and remanded April 15, 1974

RENCKEN, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND (No. 10,422), *Appellant.*

521 P2d 551

*Jim G. Russell,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Lawrence B. Rew,* Pendleton, argued the cause for respondent. With him on the brief was Corey, Byler & Rew, Pendleton.

Before SCHWAB, Chief Judge, and THORNTON and TANZER, Judges.

TANZER, J.

The State Accident Insurance Fund appeals from a circuit court order which reversed the Workmen's Compensation Board and reinstated a hearing officer's order awarding claimant permanent total disability benefits. These portions of the hearing officer's findings of fact, fully supported by the record, serve as a statement of the case:

> "Claimant suffered a compensable accidental injury to her left knee on September 23, 1966. Her claim was accepted and subsequently closed on December 28, 1971, by Determination Order of the Closing and Evaluation Division, Workmen's Compensation Board, awarding claimant, in addition to temporary disability benefits, an award of permanent partial disability resulting from the injury equal to 12 degrees for partial loss of the right forearm (10%) of the then maximum 121 degrees and 33 degrees for partial loss of the left leg (30%) of the then maximum 110 degrees * * *. Claimant filed a Request for Hearing on January 11, 1972.

> "Claimant's injury was a bruising injury of the left knee which aggravated a pre-existing degenerative arthritic condition * * *. There have been

severe complications of this injury resulting in extensive treatment, including surgery, of the left leg. There have been other consequential effects of this injury which have resulted in impairment and disability of other body areas. The required use of a crutch has caused problems with the right forearm (requiring surgical treatment) with permanent residual impairment. The right leg and its use has also been affected. Claimant at times loses her balance and falls. She has had pain and discomfort in the neck and back on occasion.

"Claimant was 59 years old at the time of her injury. She is now 64 years of age. She was the city recorder for the City of Weston when she was injured. She has had a background of office practice and has had some further education of that nature through job training since her injury. She has experience in bookkeeping, accounting and tax work and has prepared income tax returns for other persons since her injury. However, she finds it progressively more difficult to even do this type of work under the most sedentary conditions.

"No permanent unscheduled disability has been established as a residual consequence of the industrial injury of September 23, 1966. The occasional pain in the neck and back has not been established to be a permanent condition. There is evidence of some disorientation of thought and concentration during periods of heavy intake of medication but this has not been established to be a permanent condition; the only evidence of this as a disabling factor was temporarily while she was attending Blue Mountain Community College taking some business courses after her injury; these episodes would occur when she would have excessive pain from climbing the numerous steps around Blue Mountain College—her distress receded when she quit attending Blue Mountain College. This has not been established to be a deterring factor to working under regular employment conditions.

"Claimant does have permanent physical impairment resulting from her industrial injury as follows: (1) 75% loss function of the left leg; (2) 10% loss function of the right leg; (3) 10% loss function of the right forearm."

The hearing officer further found that the concurrence of the three scheduled disabilities prevented claimant from regularly performing work at a gainful and suitable occupation:

"* * * She is, at best, able to work occasionally, or part time, at spasmodic periods, under conditions which would generally be considered to be a 'scheduled [sic: sheltered?] workshop'. She is a member of that group of workers who, while they are not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market.

"The availability of regular, suitable employment has not been shown. Even as a self-employed person, her physical impairment precluded her from regularly working on any continuing basis doing the most sedentary type of work, but for which she has excellent training and experience."

■ On the basis of these findings, the hearing officer concluded that claimant fell within the perimeters of the "odd-lot" doctrine and was therefore permanently and totally disabled. That conclusion, which we hold to be erroneous, was rejected by the Workmen's Compensation Board, but reinstated by the circuit court.

The disposition of this case is controlled by statute. All of claimant's impairments are scheduled disabilities. ORS 656.214 (2)(b), (c).① There was

---

① ORS 656.214 provides in pertinent part:

"(1) As used in this section:

"(a) 'Loss' includes permanent and complete or partial loss of use.

some indication in the record that claimant had experienced some back and neck pain, but there was no showing that such pain was either disabling or causally related to claimant's industrial injury. *Cf. Fisher v. Consolidated Freightways*, 12 Or App 417, 507 P2d 53 (1973). The hearing officer concluded that claimant had no unscheduled permanent disability, and our review of the record leads us to the same conclusion. There was thus no unscheduled disability upon which to hinge a finding of permanent total disability as there was in *Mansfield v. Caplener Bros.*, 10 Or App 545, 500 P2d 1221 (1972).

■■ The upper limit of recovery for the loss of the use of a scheduled member is the award provided by the schedule. The peculiar circumstances of an individual claimant cannot be considered subjectively to enhance the measure of the loss of function beyond the schedule. *Jones v. Compensation Department*, 250 Or 177, 441 P2d 242 (1968); *Kajundzich v. State Ind. Acc. Com.*, 164 Or 510, 102 P2d 924 (1940); *Prewitt v. SAIF*, 16 Or App 208, 517 P2d 1200 (1974). That claim-

---

"(b) 'Permanent partial disability' means the loss of either one arm, one hand, one leg, one foot, loss of hearing in one or both ears, loss of one eye, one or more fingers, or any other injury known in surgery to be permanent partial disability.

"(2) When permanent partial disability results from an injury, the workman shall receive $70 for each degree stated against such disability as follows:
"* * * * *

"(b) For the loss of one forearm at or above the wrist joint, or the loss of one hand, 150 degrees, or a proportion thereof for losses less than a complete loss.

"(c) For the loss of one leg, at or above the knee joint, 150 degrees, or a proportion thereof for losses less than a complete loss.
"* * * * *"

ant suffered disability of more than one scheduled member does not change the nature of the injury from scheduled to unscheduled. *See,* e.g., *Grudle v. SAIF,* 4 Or App 326, 479 P2d 250 (1971). Only in the specific cases set out in ORS 656.206 (1) (a)[2] is the loss of combinations of scheduled members elevated to permanent total disability.

The order of the circuit court is reversed and the case is remanded for reinstatement of the order of the Workmen's Compensation Board.

Reversed and remanded.

---

[2] ORS 656.206 (1)(a) provides:

" 'Permanent total disability' means the loss, including pre-existing disability, of both feet or hands, or one foot and one hand, total loss of eyesight or such paralysis or other condition permanently incapacitating the workman from regularly performing any work at a gainful and suitable occupation."