SLOAN, *Respondent,*
*v.*
GEORGIA-PACIFIC CORP., *Appellant.*
(No. 75-2844, CA 4969)
544 P2d 588

*Jack Mattison,* Eugene, argued the cause for appellant. With him on the brief were Jaqua & Wheatley, Eugene.

*Evohl F. Malagon,* Eugene, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

## LANGTRY, J.

Employer appeals from a circuit court order which doubled to 40 percent (60 degrees) the award of the referee and the Workmen's Compensation Board for claimant's loss of use of his right leg from a work-connected injury. The injury was to the knee and necessitated surgical removal of the patella (kneecap). The only question is the extent of loss of use of the leg.

Claimant is a hook tender in a logging operation. His work entails supervision of a logging crew, including the physical moving of heavy blocks (pulleys) and straps used in connection with the rigging through which power is exerted to pull logs out of the forest. The terrain of the operation is usually brushy, broken and steep.

After claimant recovered from surgery the surgeon stated:

"* * * I do anticipate he probably will have to discontinue working in the woods, particularly under the present circumstances, and seek some form of job assignment that is less vigorous and less demanding."

Nevertheless, claimant continued with his job and performed well. His superintendent testified: "* * * [H]e is getting smarter every day of the year. I think he is better [than before]." But the evidence from claimant, corroborated by other witnesses, was that he has much difficulty on the job with functioning of the leg. The evidence leads to the inference that this difficulty is related as much or more to impaired physical function of the leg as to pain therein. Claimant is a large, strong man who has been a logger for employer for over 20 years. Formerly, he carried the blocks and straps up and down hills. Now, because of physical impairment of the leg, it gives way when he is going downhill with the load. So he throws the block and strap, overtakes them, and throws again. He testified:

"* * * I don't have any power and half the knee joint is shot. The left half is shot from the wear and tear of

[ 157 ]

this kneecap. I have got no power at all. I can't hold my weight up at all with my right leg.

"* * * * *

"Q * * * [W]hat's the difference in your leg as it was when you first got in to Dr. James and as it is now?

"A Well, there is no power at all to the leg.

"* * * * *

"Q How do you get downhill?

"A One foot at a time, one ahead of the other.

"* * * * *

"A * * * Everytime my left foot slips on a hillside that I have to catch myself with the right foot, down I go, because it just won't hold my weight, absolutely won't hold it.

"Q Comparing your condition today as it was when you last saw Dr. James, which by his report would be in August of 1974, are you about the same as you were then? Better or worse?

"A Oh, I think getting worse. The joint itself is just gradually wearing out more and more. It still grinds and pops. You can hear it."

In awarding 20 percent loss (30 degrees) of the the leg the referee said:

"Oregon law provides no schedule of disability depending on the surgical procedure performed, and in the scheduled area, the right to compensation is fixed by statute without regard to occupation, *Kajundzich v. SIAC*, 164 Or 510, 102 P2d 924 (1940). Determination of impairment of a scheduled member is primarily a medical question. The American Medical Association Guides to Evaluation of Impairment provides little help, as only amputation, restricted motion, and ankylosis are rated. The Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment finds for excision of patella, 20% permanent physical impairment and loss of physical function to the lower extremity."

Granted that claimant *can* physically do his job as well as ever, we infer that he does so by (for anyone) unusual use of the rest of his physical and mental capabilities, and that it is remarkable that he still *can* physically do the work. The question is how much loss

[ 158 ]

of use of the leg occurred, not how much he has been able to compensate for that loss by use of his intelligence, other physical attributes and determination. Such a question, on occasion, cannot be answered by use of medical criteria alone; on such occasions we also consider lay testimony about what the on-the-ground facts are. In *McManus v. SAIF*, 3 Or App 373, 474 P2d 31 (1970), we held that the lay testimony there available about loss of function by reason of knee injury and surgery was sufficient, without medical testimony about the extent thereof, to adjudge the question. Here, there is some medical evidence, plus lay testimony, to support the allowance of more for disability to the leg than indicated by the medical criteria relied on by the referee. Given a fair consideration of that evidence, we think the circuit judge's determination is well substantiated.

Affirmed.