Argued September 19, reversed October 29,
reconsideration denied December 13, 1979
petition for review allowed January 15, 1980

**WOODMAN,**
*Respondent,*
*v.*
**GEORGIA-PACIFIC CORPORATION,**
*Petitioner.*
(WCB No. 78-5283, CA 14188)
601 P2d 909

Jack Mattison, Eugene, argued the cause for petitioner. With him on the brief was Jaqua & Wheatley, P. C., Eugene.

Michael Strooband, Eugene, submitted the brief for respondent. With him on the brief was Doblie, Bischoff & Murray, P. C., Eugene.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

This is a workers' compensation proceeding. Claimant is a millwright with the employer, Georgia-Pacific Corporation. Following an industrial accident on October 26, 1974, when approximately 60,000 pounds of steel beams crushed the upper portion of his left arm, claimant's arm was amputated three to four inches below the shoulder. A June 5, 1978, determination order awarded claimant the statutory amount for the scheduled injury, 192 degrees for 100 percent loss of his arm.[1] ORS 656.214(2)(a).[2] Claimant requested a hearing, seeking an additional award for unscheduled disability to the left shoulder and back. After a hearing, the referee affirmed the determination order. On review, the Workers' Compensation Board modified the referee's order, awarding claimant 48 degrees for 15 percent unscheduled upper back disability in addition to the scheduled award for the loss of an arm. The employer appeals.

The issue here is whether, having received the full award for his scheduled disability, claimant may also receive an award for unscheduled disability causally related to the amputation. It is undisputed that claimant suffers from: (1) "bad nerves" in the left shoulder, related to a chronic neuroma problem in his stump, rendering painful the use of his prosthetic arm; (2) muscle atrophy in the left upper back; and (3) spinal problems, to which the imbalance posed by the absence of his left arm contributes. Uncontroverted medical testimony relates all of these difficulties to claimant's compensable injury.

---

[1] The order also awarded claimant 1.5 degrees for 2.5 percent loss of hearing in the left ear, and 8.4 degrees for 14 percent loss of hearing in the right ear. These portions of the award are not in issue here.

[2] At the time of claimant's accident, ORS 656.214.(2)(a) provided:

"(2) When permanent partial disability results from an injury, the workman shall receive $70 for each degree stated against such disability as follows:

"(a)For the loss of one arm at or above the elbow joint, 192 degrees, or a proportion thereof for losses less than a complete loss."

[901]

In *Kajundzich v. State Ind. Acc. Com.,* 164 Or 510, 102 P2d 924 (1940), the claimant, whose foot was injured in an industrial accident, proved that the injury caused nerve damage, resulting in atrophy and anesthesia of the leg. The court discussed the issue involved here, and cited with approval the following rule stated in *Dowling v. Gates,* 253 NY 108, 110-11, 170 NE 511 (1930):

> "A claimant who has suffered a schedule injury covered by subdivision 3 of section 15 is entitled only to an award of the amount specified in the schedule for such injury in case the effect of the injury is the usual and expected effect. If, however, some unusual and extraordinary condition develops as a result of the injury the fact that the original injury is covered by the schedule does not prevent an award for the actual, although unusual and unexpected, condition which has developed as a result of the accident. The amputation of a foot may result in blood poisoning, paralysis or death. They are not the usual results of the injury and operation, although they may be the natural and unavoidable results in particular cases. When such an unusual and unexpected result occurs, an increased award should be made.
>
> "The determination must depend upon the facts in each case. If the facts establish that a claimant is suffering from a serious, unusual and unexpected condition as the result of a schedule injury, he is entitled to an award greater than that provided for such schedule injury. If the condition is the usual and expected result of the injury, the award must be limited to the schedule amount."[3]

The court in *Kajundzich* affirmed a trial court award of permanent partial disability in excess of the scheduled award for complete loss of a foot.

Here, claimant concedes in his brief that "atrophy in the left shoulder appears to be a consequence contemplated by loss of a limb." The atrophy is, therefore,

---

[3] In *Dowling v. Gates,* the claimant's right leg was amputated below the knee, causing atrophy, crepitation at the knee, and restrictions in hip rotation. Finding that the record did not contain evidence showing that the effects of the amputation were unusual or extraordinary, the court affirmed the lower court's order limiting the award to the scheduled amount.

not separately compensable. We reach the same conclusion as to claimant's other complaints. Claimant testified that his back pain, located primarily in his upper back, is caused by imbalance and the inability to brace or support himself while leaning over to perform his welding job, due to the absence of his left arm. Much of his problem in bracing himself results from the pain associated with the use of his prosthetic arm for support, caused in turn by his neuroma condition. The sole medical evidence on this point is to the effect that the absence of his left arm "contributes" to claimant's spinal problems. Imbalance due to the absence of an arm is precisely the type of difficulty contemplated by the scheduled award for loss of an arm. Claimant produced no medical evidence as to whether his neuroma problem is an expected consequence of amputation. Thus, he failed to carry his burden of proof as to the compensability of his claim.

Reversed.